**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1161-WJM-CBS

AMICA LIFE INSURANCE COMPANY,

     Plaintiff,

v.

MICHAEL P. WERTZ,

     Defendant.

---

## ORDER GRANTING PLAINTIFF'S RULE 702 MOTION

---

In this declaratory judgment action, Plaintiff Amica Life Insurance Company

("Amica") seeks a ruling that the death of an insured, Martin K. Fisher ("Fisher"), does

not obligate it to pay life insurance benefits because Fisher took his own life. (ECF

No. 1.) Defendant Michael P. Wertz ("Wertz") is the named beneficiary under Fisher's

policy, and has counterclaimed for breach of insurance contract. (ECF No. 50.)

Currently before the Court is Amica's Motion Pursuant to Fed. R. Evid. 702 to

Exclude Testimony of Defendant's Expert. (ECF No. 58.) For the reasons explained

below, this motion is granted.

## I. BACKGROUND

As summarized in the Court's only other substantive order in this matter, this

dispute centers around whether the suicide exclusion in Fisher's life insurance policy is

enforceable. *See Amica Life Ins. Co. v. Wertz*, 2016 WL 8253895, at *1 (D. Colo. May

11, 2016).[1]  Fisher's policy with Amica provided that suicide was not covered if it occurred within two years of when the policy issues, as permitted under the Individual Term Life Insurance Standards ("Interstate Standards") promulgated by the Interstate Insurance Product Regulation Commission ("Commission").  *Id*.  Colorado is a member of the Interstate Insurance Product Regulation Compact, from which the Commission derives its authority.  *Id*.

Fisher's suicide on March 12, 2015, was less than two years from January 28, 2014, when his policy issued.  *Id*.  Given that, Amica denied Wertz's claim for Fisher's death benefit.  *Id*.  Wertz contends, however, that Colorado Revised Statutes § 10-7-109 controls this matter.  *Id*.  That statute only permits one-year suicide exclusions, and Fisher's suicide took place more than one year after his policy issued.  Amica then filed for declaratory judgment that the Interstate Standards control when in conflict with § 10-7-109; Wertz counterclaimed for the opposite declaration, and for the policy benefits themselves.  *Id*.

At first, the parties agreed that this case presented a pure issue of law to be resolved on the papers: does application of the Interstate Standards in Colorado violate Colorado constitutional doctrines regarding delegation of legislative authority, separation of powers, equal protection, and special legislation?  *Id*. at *1–2.  After the close of briefing on those matters, however, Wertz filed a motion to amend his answer and counterclaims, asserting that he had recently discovered evidence suggesting that the Commission did not follow its own procedures for promulgating the Interstate

---

[1] On the Court's docket at ECF No. 49.

Standards. *Id*. at *2–3.  The Court agreed to permit amendment, finding that the Commission's alleged procedural irregularity should be explored because, if the irregularity in fact existed, it would permit the Court to avoid the "weighty" Colorado constitutional questions. *Id*.

About a month before the Court issued that order, Wertz obtained an expert opinion from Mr. John Kezer, Esq., regarding various matters supposedly at issue. (ECF No. 58-1.)  Amica now moves to exclude Kezer's opinion as inadmissible under Federal Rule of Evidence 702, largely because it comprises interpretations of (or opinions about) the law, not explanation of facts in light of governing law.

## II.  LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

"An opinion is not objectionable just because it embraces an ultimate issue."

Fed. R. Evid. 704(a).  Nonetheless, "[t]here is a significant difference between an

attorney who states his belief of what law should govern the case and any other expert

witness.  While other experts may aid a jury by rendering opinions on ultimate issues,

our system reserves to the trial judge the role of adjudicating the law for the benefit of

the jury."  *Specht v. Jensen*, 853 F.2d 805, 808–09 (10th Cir. 1988).

## III.  ANALYSIS

Kezer states that he is "keenly aware of the concerns any Court might have

about its role to address legal issues and questions," and he therefore strove to apply

his background, experience, and training "to the relevant facts and issues and not to

create or write legal opinions."  (ECF No. 58-1 at 7.)[2]  Kezer's own words elsewhere in

his opinion, however, implicitly reveal the difficulty he faced in this task:

> The *legal issues* are clearly presented in the pleadings, but,
> briefly summarized as an introduction to my report and
> opinions, [they] entail the questions as to:
>
> > Can and do the actions of the Commission by which it
> > promulgated [Interstate] Standards which established a
> > two (2) year suicide exclusion override . . . the long-
> > established and existent Colorado statute which contains
> > a one (1) year suicide exclusion?
>
> > You've asked that I apply my background, experience and
> > training as a former Colorado Insurance Commissioner and
> > as a licensed attorney in Colorado with a practice emphasis
> > in insurance and insurance regulatory law, to address and
> > opine about *these questions*.

(*Id*. at 4 (emphasis added).)

---

[2] All ECF page citations are to the page number in the ECF header, which does not
always match the document's internal pagination, particularly in exhibits.

Given the scope of his retention, it is perhaps unsurprising that his opinion then goes on to read like a legal memorandum.  Kezer discusses, for instance, how the Commission's promulgation procedures differ from those that Colorado regulators must follow; about the public policy interests served by formal rulemaking under the Colorado Administrative Procedures Act; about what the Commission's promulgation of the Interstate Standards "should have involved" (from a policy perspective) to protect Colorado insurance consumers; and what Kezer himself would have done if he had been head of the Colorado Division of Insurance at the time the Commission promulgated the Interstate Standards.  (*See id*. at 7–13.)  There is nothing that "will help *the trier of fact* to understand the evidence or to determine a *fact* in issue."  Fed. R. Evid. 702(a) (emphasis added).  Rather, Kezer simply presents arguments about the legal issues this Court may eventually decide, depending on the evidence regarding whether the Commission properly promulgated the Interstate Standards under its own rules.

To be sure, an expert's testimony is not *per se* inadmissible simply because it requires discussion of the law.  "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  *Specht*, 853 F.2d at 809.  Moreover, even where the decision is ultimately a matter for the Court, the Court may admit expert evidence of matters such as custom and usage in the relevant industry.  *See Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992).  But Kezer does not offer anything like this.  For example, although Wertz has raised a question whether the Commission properly promulgated its own Interstate Standards, Kezer offers no expert insight into those promulgation

5

procedures (*e.g.*, how they are customarily carried out, if different from the Commission's written guidelines).  Wertz has also raised a question of whether the Colorado Legislature received sufficient time to examine and opt out of the Interstate Standards, but Kezer offers no insight into how the relevant legislative office or committee receives and examines proposed standards from the Commission.  Kezer ultimately does no more than render an opinion on precisely the topic he was retained to render an opinion: whether Colorado Revised Statutes § 10-7-109 or the Interstate Standards control in this case.  That is a question of law for the Court, not the proper subject of expert testimony.  Amica's motion will be granted.

The Court recognizes that Wertz has already filed a summary judgment response brief that attaches, and cites to, Kezer's report.  (*See* ECF No. 70-2.)  The Court will treat Kezer's arguments in that Rule 56 context for what they are—legal arguments—and evaluate them as it would any legal argument advanced in a brief filed with respect to Amica's motion for summary judgment.  The Court will not accept Kezer's arguments for the purposes of creating a material issue of fact.[3]

## IV.  CONCLUSION

For the reasons stated above, Amica's Motion Pursuant to Fed. R. Evid. 702 to Exclude Testimony of Defendant's Expert (ECF No. 58) is GRANTED.  The Court recognizes that its Order today may impact Amica's summary judgment reply brief strategy.  As a consequence, and as a courtesy to counsel, the Court *sua sponte*

---

[3] The Court notes that Kezer has also submitted an affidavit in support of Wertz's summary judgment response.  (ECF No. 70-1.)  Amica is free to argue against the admissibility of this affidavit in its summary judgment reply brief (and not in any separate motion to strike), but the Court will not prejudge that matter in this Order.

extends the deadline for Amica to file its reply brief in support of its motion for summary judgment by one day, to March 9, 2017.

Dated this 7th day of March, 2017.

BY THE COURT:

William J. Martinez
United States District Judge